**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| JULIUS BRYANT, *individually, and on behalf of others similarly situated,*<br><br>Plaintiff,<br>v.<br><br>DIGITAL MEDIA SOLUTIONS, LLC<br><br>Serve registered agent at:<br>Universal Registered Agents, Inc.<br>7533 County Road 1127<br>Godley, Texas 76044<br><br>Defendant. | Case No.: 3:24-cv-1814<br><br>**Jury Trial Demanded** |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff Julius Bryant ("Bryant"), individually, and on behalf of all others similarly situated, and for his Class Action Complaint against Defendant Digital Media Solutions, LLC ("Defendant"), states:

### BACKGROUND

1. This case is about stopping incessant telemarketers like Defendant from sending unwanted text messages to the cell phones of Bryant and likely thousands of other persons.

2. Bryant brings this class action lawsuit against Defendant for sending improper telemarketing solicitation text messages in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and the TCPA's corresponding regulations.

3. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' consumers' privacy and the right to be left alone from unwanted telemarketing communications.

1

4. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

5. Defendant sent telemarketing text messages to Bryant and the putative class members despite Bryant's and the putative class members phone numbers being registered on the National Do-Not-Call Registry ("DNC List").

6. In the first six months of 2024 alone, approximately 25.5 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited July 16, 2024). The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing communications. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

7. Bryant seeks to represent putative class members who received two or more telemarketing text messages within a 12-month period from Defendant after previously registering their numbers on the DNC List.

## PARTIES AND BACKGROUND ON THE PARTIES

8. Bryant is an individual who at all times material to this Complaint has been a citizen of the State of Texas, and who suffered the harm complained of in this Division.

9. Bryant is a "person" as that term is defined by 47 U.S.C. §153(39).

10. Defendant is a Delaware corporation with its principal place of business in Florida, who at all times material to this Complaint has been registered with the State of Texas to transact

business in the State of Texas and who has also been in good standing to transact business in Texas and throughout the United States.

11. Defendant is a "person" as that term is defined by 47 U.S.C. §153(39).

12. Defendant's website states that it connects "consumers with advertisers across our core verticals" including "Education."

13. Defendant's website further states that its "innovative solutions help consumers shop and save, while helping our advertisers achieve above average return on ad spend."

14. Defendant markets its clients' products and services, in part, through telemarketing activities such as placing text messages directly to consumers or having such text messages placed on its behalf.

15. Defendant's LinkedIn profile states that its specialties include among other things, "SMS Messaging," "Lead Generation" and "Content Advertising."

## JURISDICTION AND VENUE

16. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

17. This Court has jurisdiction over Defendant because Defendant's transacts business in Texas and purposefully directed its marketing efforts to Bryant, a Texas resident, who possesses a Texas area code.

18. Venue is proper as Bryant received the unwanted text messages while in this District.

19. For those reasons, and as set forth generally in this Complaint, this Court has personal jurisdiction over the parties to this action, and venue is proper pursuant to 28 U.S.C. §1391(b)(2).

**FACTUAL BACKGROUND**
**DEFENDANT'S TEXT MESSAGES**

20. At all times relevant to this Complaint, Bryant was the owner of a phone bearing the phone number 469-XXX-7782.

21. Bryant registered his phone number on the DNC List on March 31, 2019, for the purpose of not receiving telemarketing calls on this number.

22. The account for Bryant's phone is held in Bryant's personal name and not in the name of a business.

23. Bryant uses his phone primarily for personal and household purposes, including communicating with friends and family members.

24. Bryant did not inquire of Defendant's products or services or request information about Defendant's products or services.

25. Bryant did not provide Defendant "prior express consent" as that term is defined in 47 C.F.R. § 64.1200(f)(9) or any other form of consent to send her text messages.

26. On September 22, 2020, Bryant received a text message from Defendant, stating, "Complete a simple 3 step questionnaire to see if you qualify for $6000 in Grants. http://begin-here-today.info."

27. On September 30, 2020, Bryant received an identical text message from Defendant, stating, "Complete a simple 3 step questionnaire to see if you qualify for $6000 in Grants. http://begin-here-today.info."

28. On October 7, 2020, Bryant received another identical text message from

Defendant, stating, "Complete a simple 3 step questionnaire to see if you qualify for $6000 in Grants. http://begin-here-today.info."

29. Each of these text messages appeared on Bryant's phone as having originated from short code 33959.

30. Upon clicking the links in the text messages, the recipient is directed to a website to answer various questions. After answering those questions, the recipient is directed to a website located at classesandcareers.com.

31. The classesandcareers.com website states that "ClassesAndCareers.com is a division of Digital Media Solutions 4800 140th Ave N., Suite 101, Clearwater, Florida 33762."

32. The classesandcareers.com website also states that the website "is an Internet property of Digital Media Solutions."

33. Bryant did not visit Defendant's website before receiving the text messages or click on any buttons on the website.

34. The purpose of these text messages was to solicit Bryant to purchase the education products and services of Defendant's client(s).

35. For example, the classesandcareers.com website promotes various for-profit colleges.

36. On information and belief, Defendant sent similar text messages to Bryant and the putative class members.

37. On information and belief, the purpose of each of Defendant's text messages sent to Bryant and the putative class members was to attempt to get Bryant and the putative class members to use Defendant's clients' products and services and/or using Defendant's products and services in exchange for providing something incredibly value, such as the consumer's data.

38. Bryant and the putative class members did not provide Defendant "prior express written consent" as defined in 47 C.F.R. § 64.1200(f)(9) or any other form of consent to Defendant to send text messages to their phones.

39. Bryant had not heard of Defendant's company before receiving the previously mentioned unsolicited text messages and was not looking to receive unclaimed property funds.

40. On information and belief, Defendant knew that it should not have sent text messages to Bryant and the putative class members, yet incessantly sent them text messages.

41. The text messages Defendant placed to Bryant and the putative class members were harassing, irritating, invasive and annoying.

42. Defendant's text messages invaded Bryant's and the putative class members' right to privacy, namely the right to be left alone from unwanted telemarketing text messages.

43. Defendant's text messages caused Bryant and the putative class members to waste time and be disrupted from their daily activities, addressing and/or responding to the unwanted text messages.

**DIRECT AND VICARIOUS LIABILITY**

44. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers,

6

suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

45. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

46. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

47. If Defendant directly sent the text messages to Bryant, Defendant is directly liable for those text messages.

48. However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third parties who are unknown at this time as the links in the text messages only led back to Defendant and no other entity.

49. To the extent a third party sent the text messages at issue, such party or parties had actual and/or apparent authority to act on behalf of Defendant.

50. Likewise, Defendant may have also ratified a third party's violations of the TCPA by accepting leads and deriving profit from the improper text messages.

51. Defendant controlled or had the right to control the marketing activities of any potential third party. Among other things, the text messages sent to Bryant were like text messages complained of by other consumers.

52. Defendant is not permitted under the law to outsource and contract its way out of liability by directing and benefiting from its agents' TCPA violations.

53. For the counts identified below, if Defendant directly sent the text messages, it is directly liable. In the alternative, to the extent any text messages were made by a third-party agent(s) acting on Defendant's behalf, Defendant can be held jointly and severally liable as Defendant is vicariously liable for those unlawful text messages.

## CLASS ALLEGATIONS

54. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Bryant brings this Complaint as a class action on behalf of himself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

55. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3), Bryant seeks to represent the following class:

> **DNC List Class:** All persons in the United States who from four years prior to the date of the filing of this lawsuit until the date of class certification: (1) to whom Defendant (or someone acting on its behalf) sent two or more text messages during a 12-month period; (2) where the text messages were made for solicitation purposes, (3) whose number was registered on the DNC List for more than 31 days at the time the texts were sent; (4) where the phone number to which the texts were sent was registered to an individual, rather than a business.

56. Bryant reserves the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

57. The members of the proposed class are so numerous that joinder of all members is impracticable. Bryant reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions. The names and phone numbers of the members of the proposed class are readily identifiable through records available to Defendant or those acting on its behalf.

58. Members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

59. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

   a. Whether the text messages at issue qualify as "telephone solicitations" for the purposes of 47 U.S.C. § 227(c);

   b. Whether Defendant's conduct violates 47 U.S.C. § 227(c) of the TCPA;

   c. Whether an agency relationship exists between Defendant and anyone placing such text messages on its behalf;

   d. Whether Defendant's manner and system of obtaining consumer "consent" was legally deficient;

   e. Whether Defendant implemented policies and procedures for TCPA compliance that would warrant the "good faith safe harbor" prescribed by 47 C.F.R. § 64.1200(c);

   f. Whether Defendant's conduct violates the rules and regulations implementing the TCPA; and

   g. Whether Bryant and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

60. Bryant's claims are typical of the claims of the proposed class members because his claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

61. Bryant and his counsel will fairly and adequately protect the interests of the members of the proposed class. Bryant's interests do not conflict with the interests of the proposed class he seeks to represent. Bryant has retained lawyers who are competent and experienced in consumer litigation, the TCPA and class-actions.

62. Bryant's counsel will vigorously litigate this case as a class action, and Bryant and his counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

63. A class action is superior to all alternative methods of adjudicating this controversy, including through individual lawsuits. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

64. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

65. Questions of law and fact, particularly the propriety of sending text messages to person on the DNC List, predominate over questions affecting only individual members.

### COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(c) *et seq.*
### (National DNC List Violations – Individually, and on Behalf of The Putative Class)

66. Bryant incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

67. The TCPA provides that is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one telephone solicitation on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§

227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

68. The penalty for each call placed in violation of the TCPA's restrictions on sending text messages to phone numbers registered on the DNC List is up to $500 per text message and up to $1,500 per text message if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

69. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting text messages to phone numbers registered on the DNC List. *See* 47 U.S.C. §§ 227(c)(5)(A).

70. By placing text messages to Bryant and the putative class members' phone numbers, which were registered on the DNC List, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c)(1) and/or the TCPA's corresponding regulations.

71. Defendant and/or those acting on their behalf knew or should have known that Bryant's and the putative class members' phone numbers were registered on the DNC List.

72. Defendant and/or those acting on their behalf willfully violated the TCPA when send the text messages at issue to Bryant's and the putative class members' cell phones.

73. Bryant and the putative class members are entitled to damages of up to $500.00 per violation for each text message sent by Defendant and/or those acting on their behalf that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that Defendant or those acting on its behalf willfully violated the TCPA.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff Julius Bryant, individually, and on behalf of all others similarly situated, requests the Court grant the following relief in her favor and against Defendant Digital Media Solutions, LLC:

A. Enter an order against Defendant, pursuant to Federal Rule of Civil Procedure 23, certifying this action as a class action and appointing Bryant as the class representative;

B. Enter an order appointing Butsch Roberts & Associates LLC as class counsel;

C. Enter judgment in favor of Bryant and the DNC List Class members for all damages and other relief available under the TCPA, 47 U.S.C. § 227(c), including injunctive relief, statutory damages of $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

D. Enter a judgment in favor of Bryant and the Class that enjoins Defendant from violating the TCPA's provisions and regulations;

E. Enter judgment in favor of Bryant and the Class for all applicable pre-judgment and post-judgment interest amounts;

F. Enter judgment in favor of Bryant and the Class for all costs; and,

G. Award Bryant and the Class members such further and other relief the Court deems just and appropriate.

### **DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff Julius Bryant demands a jury trial.

BUTSCH ROBERTS & ASSOCIATES LLC

*/s/ Christopher E. Roberts*
Christopher E. Roberts #61895MO
7777 Bonhomme Avenue, Suite 1300
Clayton, MO 63105
Telephone: (314) 863-5700
croberts@butschroberts.com

*Attorney for Plaintiff*